FILED
JAMES J.VILT JR, CLERK
8/26/2026
U.S. DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

MARK BRAUN and DALLAS SHELTON individually and on behalf of all others similarly situated,

Plaintiffs,

v.

LOUISVILLE LADDER INC.

Defendant.

Case No. 3:26CV-665-RGJ

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiffs Mark Braun and Dallas Shelton ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this Class Action Complaint against Defendant Louisville Ladder Inc. ("Louisville Ladder" or "Defendant") and allege the following based on personal knowledge as to themselves, and as to all other matters, upon information and belief, including investigation conducted by their attorneys:

## NATURE OF THE ACTION

1. This is a proposed class action arising from the dangerous design and prolonged concealment of a known defect in certain attic ladders with gas struts and ¼" chrome-colored spreader bolts (the "Products" or "Ladders"). Specifically, Defendant designed, manufactured, marketed, distributed, and sold the Products with a uniform defect that causes the bolts to break while in use during ordinary, foreseeable use, posing a serious risk of injury or death from the resulting fall hazard (referred to herein as the "Defect").

2. Attic ladders, such as those manufactured from Louisville Ladder, are used to access attic spaces through installation in the lower floor's ceiling/attic floor, where the Ladder will fold out and extend, providing access.

3. A defective attic ladder is a dangerous complication to a critical access point in the home. "An attic ladder is a permanent fixture people rarely think about between uses, and it is typically climbed while carrying storage bins, holiday decorations, or insulation."[1]

4. Such Ladders manufactured by Louisville Ladder are advertised in part with an American National Standards Institute ("ANSI") "Duty Rating" of IAA,[2] or "Special Duty," meaning it can bear a load of 375 lbs.[3]

5. Consumers trust in the apparent veracity of Louisville Ladder's claims to install it and trust it for their regular transit through their attic space for years at a time: in other words, they rely on Louisville Ladder for equipment they can set and forget.

6. To go without a promise of safety is not optional: "A failure partway up drops a person onto a hard hallway or garage floor, often while their hands are occupied."[4]

7. However, unbeknownst to consumers, the attic ladders are not as safe as they promise: in fact, the bolts can break while in use, posing a risk of serious injury or death from the fall hazard.[5]

8. Consumers would not have purchased or installed the attic ladder had they known it could break in use, exposing them to a risk of serious injury and death – or, at minimum, they certainly would not have paid the price premium Louisville Ladder charged for this Product.

---

[1] https://www.medicaldaily.com/louisville-attic-ladder-recall-bolt-break-fall-hazard-2026-477174 (last accessed August 14, 2026).
[2] https://www.grainger.com/product/824Y66?gucid=N:N:PS:Paid:GGL:CSM-2295:UU5CX9:20800606:APZ_1&gclsrc=aw.ds&gad_source=1&gad_campaignid=22475795893&gclid=Cj0KCQjw-frTBhCvARIsADv4XY4qkLpkQGlfwmD2-PRGpQo8OikuotE2AsZoW0tqjekhoLIAyeRyeDcaAkF_EALw_wcB (last accessed August 14, 2026).
[3] *See* Exhibit 1 at p.2, "OSHA Fact Sheet, Reducing Falls in Construction: Safe Use of Extension Ladders."
[4] *See* n.1, *supra*.
[5] https://atticstairwayrecall.expertinquiry.com/ (last accessed August 14, 2026).

9. On August 6, 2026, the Consumer Product Safety Commission ("CPSC"), together with Louisville Ladder, announced the recall ("Recall") of over 1.7 *million* Ladders.[6] The Ladders were sold nationwide for between $170 and $600 each between November 2012 and July 2026.[7]

10. However, Louisville Ladder's recall does little to make consumers whole: rather than make consumers whole with a full refund of the product, or a replacement of the product without the latent defects, it instead pushes the onus back on consumers to remedy a defect in its *own* product.

11. Per the Recall Notice, consumers are to "stop using the recalled ladders immediately and register at atticstairwayrecall.expertinquiry.com to receive a free repair kit… if your unit is included in the recall, the firm will send a free repair kit containing two replacement, ¼" spreader bolts, washers, and lock nuts with installation instructions."[8]

12. This Recall is insufficient for several reasons. First, it does not make consumers whole for purchasing a Ladder they had no reason to know was defective in such a dangerous manner, due to Louisville Ladder's representations and omissions. Second, it places the onus on consumer to fix Louisville Ladder's design defect themselves by ordering repair parts from Louisville Ladder and installing it themselves. After deceiving consumers for fourteen years, Louisville Ladder's effort does nothing to shore up trust that its Ladder, even with the fix, will live up to its false "special duty" IAA rating that many consumer relied upon when purchasing the Ladder.

[6] https://www.cpsc.gov/Recalls/2026/Louisville-Ladder-Recalls-Over-One-Million-Attic-Stairway-Ladders-Due-to-Risk-of-Serious-Injury-or-Death-from-Fall-Hazard (last accessed August 14, 2026).
[7] *Id.*
[8] *Id.*

13. Even worse, at the time of the Recall, Louisville Ladder's process for taking in affected products is incomplete. Louisville Ladder's failure to make the recall remedy available upon announcement not only adds to its insufficiency, but in fact prevents consumers from *accessing part of their home*, as the recall directs consumers who have installed the ladder to stop using it.

14. Now come Plaintiffs seeking to remedy what Louisville Ladder itself would not: making consumers whole for its defective product.

15. Plaintiffs, representing a class of Nationwide consumers, and subclasses of Indiana and Illinois purchasers, bring this action against Louisville Ladder concerning its omissions about the dangerously defective Ladders, and the insufficient recall and administration thereof, and brings claims for Unjust Enrichment, Breach of Implied Warranty, Negligent Misrepresentation, and violations of Indiana and Illinois consumer protection statutes.

## PARTIES

16. At all relevant times, Plaintiff Mark Braun was and is a resident and citizen of Fort Wayne, Indiana, who purchased a Ladder on December 27, 2025 through Home Depot for $339.00.

17. At all relevant times, Plaintiff Dallas Shelton was and is a resident and citizen of Elk Grove Village, Illinois, who purchased a Ladder in 2023 from Home Depot for approximately $440.00.

18. Defendant Louisville Ladder Inc. is a Delaware corporation headquartered in Louisville, Kentucky. According to information and belief, Defendant or its subsidiaries are involved in the design, manufacturing, marketing, sale, and distribution of the recalled Products.

19. Upon belief or information Defendant directly or through third-party entities, designed, manufactured, distributed, marketed, advertised, and sold the recalled Products at the Home Depot, Lowe's, Do It Best, Orgill, and other retailers nationwide and on-line at Amazon.com.

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act because: (1) there are 100 or more putative Class Members; (2) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs; and (3) there is diversity because Plaintiffs and at least one Defendant are citizens of different states.

21. This Court has personal jurisdiction over Defendant because Defendant is headquartered in this District, does substantial business in this State and within this District, receives substantial compensation and profits from the marketing, distribution, and sale of products in this District, and has engaged in the unlawful practices described in this Complaint within this District.

22. Under 28 U.S.C. § 1391, venue is proper in this District because Defendant is headquartered in this District. Because Defendant's principal place of business is in this District, venue is proper.

## COMMON FACTUAL ALLEGATIONS

### A. Louisville Ladder Advertises the Affected Ladders to Consumers Omitting its Safety Risk

23. Defendant Louisville Ladder manufactures "[l]adders and accessories that are tested and trusted at the top."[9] Specifically, with regard to its attic ladders, it advertises: "Reach maximum storage, safety, and stability with help from extra-strength ergonomic attic ladders."[10]

24. When it comes to Safety, on Louisville Ladder's Frequently Asked Questions (FAQ) page, under "Where can I get information about Ladder Safety?", Defendant answers "Louisville Ladder is highly committed to Ladder Safety."[11]

25. The affected ladders were also advertised with an ANSI rating of "Type IAA."[12]

26. IAA, as a safety rating, as determined by the American National Standards Institute's standards for Stairways and Ladders, is rated for "rugged" use and a load of 375 lbs.[13]

27. Consumers installing attic ladders in their home necessarily look to a safety rating when considering their choice in product: the attic, where they will carry not only themselves, but different containers and materials in and out, many times throughout the year, for the life of their tenure in the house.

28. Consumers rely on Louisville Ladder's representations, including Safety Ratings that are displayed when consumers purchase the Ladders, when purchasing the Ladder for themselves, and also rely on Louisville Ladder's omissions – what Louisville Ladder has not said in relation to its affected Ladders, such as their dangerous propensity to break and fail.

### B. Louisville Ladder Recalls the Product After Having Notice of Several Incidents Resulting in Injury

---

[9] https://louisvilleladder.com/ (last accessed August 14, 2026).
[10] *Id.*
[11] https://louisvilleladder.com/faqs/ (last accessed August 14, 2026).
[12] *See* n.2, *supra*.
[13] Ex. 1, p.2.

29. By the time Louisville Ladder recalled the affected Ladders in August 2026, it had already been made directly aware of 11 reports of critical bolts breaking, including at least one report of an injury to the neck, head, and back.[14]

30. The recall is for 1,770,000 products sold for around $170 and $600 from January 2023 through June 2026.[15] The affected products are Louisville, Featherlite, and Lite & Century Attic Stairway Ladders with gas struts.[16] A full listing of affected model numbers, as identified by Louisville Ladder, is attached as Exhibit 2.

### C. Louisville Ladder's Recall Fails to Make Consumers Whole, Places the Onus for Its Fault on Consumers, and the Recall Remedy, However Paltry, is Itself Illusory

31. Consumers reasonably relied on Louisville Ladder's misrepresentations and omissions concerning the safety (and lack of danger) of the affected Ladders when making their purchase. As such, the appropriate remedy in the recall would be to refund consumers for the dangerous product in their home.

32. Louisville Ladder, however, chooses profits over people; instead of sending consumers their money back for the dangerous object in their home, or at least sending them a newly re-designed Ladder without this issue, it instead provides a "free repair kit containing two replacement ¼" spreader bolts, washers, and lock nuts with installation instructions."[17]

33. After revealing the latent defect within the affected Ladders, Louisville Ladder chooses a patch job that its own customers must install and modify a product previously represented to them as safe, forcing consumers to take time out of their busy lives to contact Louisville Ladder directly and seek a repair part.

---

[14] *See* n.6, *supra*.
[15] *Id.*
[16] *Id.*
[17] *Id.*

34. Moreover, once the repair part comes, rather than Louisville Ladder itself or a Louisville Ladder-selected professional, Louisville Ladder asks these same consumers to install it themselves. Such modifications, beyond being an imposition, also erode the value of the Ladder as consumers have paid for it; it also does little to re-instill trust on the safety of the Ladder, now broken forever by Louisville Ladder's concealment of the dangerous defect.

35. Still unbeknownst to consumers, however, is the impact this part will have, because Louisville Ladder's recall process, despite being announced by the CPSC, continues to leave consumers in the lurch.

36. Indeed, though Louisville Ladder has a webpage dedicated to the Recall, attempts to take part in the Recall have been rebuffed, with consumers being told the parts may not ship out for another month. For consumers, this means no access to their attic – no access to part of their home via the cumbersome, already installed Ladder – for an entire month.

37. The recall fails to make consumers whole after Louisville Ladder delivered to them a dangerously defective product, which consumers would not have purchased—or, at minimum, would have purchased for less than the price Louisville Ladder purported to charge—had they known the truth.

## PLAINTIFFS' ALLEGATIONS

*Plaintiff Braun's Allegations*

38. Plaintiff Braun purchased the Ladder for installation in his home. He was unaware of the propensity to break, and the fall risk resulting therefrom, associated with the Ladder at the time of purchase.

39. At the point of purchase, Plaintiff Braun read and reasonably relied on Defendant's representations that the ladder had an IAA rating from ANSI and was reasonably safe and fit for its intended purpose.

40. Had Louisville Ladder disclosed the Defect to Plaintiff Braun, he would not have purchased the product or purchased it on the terms he had.

41. The recall is insufficient: it fails to give Mr. Braun any monetary compensation in light of the defective Ladder he purchased, which he would not have at all, or on the same terms, had he known the truth.

42. Instead, Mr. Braun, like the Class, remains damaged because they relied on Louisville Ladder's representations and omissions in making a purchase for their home.

*Plaintiff Shelton's Allegations*

43. Plaintiff Shelton purchased the Ladder for installation in his home. He was unaware of the propensity to break, and the fall risk resulting therefrom, associated with the Ladder at the time of purchase.

44. At the point of purchase, Plaintiff Shelton read and reasonably relied on Defendant's representations that the ladder had an IAA rating from ANSI and was reasonably safe and fit for its intended purpose.

45. Had Louisville Ladder disclosed the Defect to Plaintiff Shelton, he would not have purchased the product or purchased it on the terms he had.

46. The recall is insufficient: it fails to give Mr. Shelton any monetary compensation in light of the defective Ladder he purchased, which he would not have at all, or on the same terms, had he known the truth.

47. Instead, Mr. Shelton, like the Class, remains damaged because they relied on Louisville Ladder's representations and omissions in making a purchase for their home

**TOLLING AND ESTOPPEL OF THE STATUTE OF LIMITATIONS**

48. Defendant has continuously marketed and sold the dangerous Products to unsuspecting customers. It continuously represented that the Products are safe and suitable for use.

49. Defendant affirmatively concealed the existence and scope of the Defect while continuing to market the Products as safe. Plaintiffs and Class Members had no reasonable means of discovering the concealed Defect prior to the Recall because the relevant information was exclusively within Defendant's possession.

50. Thus, at all relevant times, Defendant indisputably possessed continuous knowledge of the material dangers posed by the Products, and yet Defendant knowingly continued to allow the sale of the Products. Plaintiffs and other Class Members' claims are not time-barred.

51. Moreover, even after the Recall, there is no evidence that news of the Recall Notice reached all Product owners.

52. Plaintiffs and other Class members could not have reasonably discovered and could not have known facts that would have caused a reasonable person to suspect that Defendant knowingly failed to disclose material information within its knowledge about a dangerous defect to consumers in the United States and elsewhere. Therefore, no potentially relevant statute of limitations should apply.

53. Throughout the time period relevant to this action, Defendant concealed from and failed to disclose to Plaintiffs and the other Class Members vital information about the Defect described herein.

54. Defendant kept Plaintiffs and the other Class Members ignorant of vital information essential to the pursuit of their claims. As a result, neither Plaintiffs nor the other Class Members could have discovered the Defect, even upon reasonable exercise of due diligence.

55. Defendant had a duty to disclose to Plaintiffs and the Class Members the true quality and nature of the Product, that the Product has a uniform dangerous Defect, and that it poses safety concerns and is in fact dangerous.

56. Instead, Defendant continued to market the Product as suitable for its intended purpose to further profit from the sale of its popular Product and prevent Plaintiffs and other Class members from seeking redress.

57. Plaintiffs and the other Class Members justifiably relied on Defendant to disclose the true dangerous nature of the Products they purchased and/or owned because that Defect was not discoverable by Plaintiffs and the other Class Members through reasonable efforts.

58. Defendant's affirmative acts of concealment, including its continued marketing of the Defective Product as safe, reliable, and fit for its intended purpose while possessing knowledge of the hazard, further support estoppel and tolling of any applicable limitations period.

## CLASS ACTION ALLEGATIONS

59. Plaintiffs bring this action on behalf of themselves and the following Classes under Rule 23(b)(3) and 23(c)(4) of the Federal Rules of Civil Procedure:

**Nationwide Class:**

All persons in the United States who purchased the Ladders for personal use and not for resale during the fullest period provided by law.

and

**Indiana Class:**

All persons in Indiana who purchased the Ladders for personal use and not for resale during the fullest period provided by law.

and

**Illinois Class:**

All persons in Illinois who purchased the Ladders for personal use and not for resale during the fullest period provided by law.

60. Excluded from the Class are: (a) any officers, directors or employees, or immediate family members of the officers, directors, or employees of Defendant or any entity in which Defendant has a controlling interest; (b) any legal counsel or employee of legal counsel for the Defendant; (c) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members; and (d) any person who has previously settled claims related to the Defect with Defendant.

61. Plaintiffs reserve the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

62. **Numerosity.** Class Members are so numerous and geographically dispersed that joinder of all Class Members is impracticable. While the exact number of Class Members remains currently unknown, upon information and belief, there are over 1.7 million products sold, likely constituting the same, or approximately the same number of putative Class Members. Moreover, the number of members of the Class may be ascertained from Defendant's books and records, as well as third-party retailers.

63. **Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist for all Class Members and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

a. Whether the Product contained the Defect alleged herein;

b. Whether Defendant knew or should have known of the Defect;

c. Whether Defendant had to disclose the Defect to consumers;

d. Whether Defendant's representations and omissions were misleading or deceptive;

e. Whether Defendant's conduct was unfair or illegal;

f. Whether Class Members suffered economic injury;

g. Whether Defendant's conduct violates public policy;

h. Whether Defendant's conduct violates the consumer protection statutes alleged herein;

i. Whether Plaintiffs and putative members of the Class have suffered an ascertainable loss of monies or property or other value as a result of Defendant's acts and omissions of material facts;

j. Whether Defendant was unjustly enriched at the expense of Plaintiffs and members of the putative Class in connection with selling the Ladders; and

k. Whether Plaintiffs and members of the putative Class are entitled to monetary damages and, if so, the nature of such relief.

64. **Typicality.** Plaintiffs' claims are typical of those of the absent Class Members in that Plaintiffs and the Class Members each purchased and used the Product, and each sustained damages arising from Defendant's wrongful conduct, as disclosed herein. Plaintiffs share the aforementioned facts and legal claims or questions with the putative Class Members. Plaintiffs and all members of the putative Class have been similarly affected by Defendant's common misconduct alleged herein. Plaintiffs and all members of the putative Class sustained monetary and economic injuries including—but not limited to—ascertainable losses resulting from Defendant's deceptive

omissions concerning the Product's safety and its ability, as well as the proposed repair remedy's ability, to function as intended.

65. **Adequacy.** Plaintiffs will fairly and adequately represent and protect the interests of the members of the putative Class. Plaintiffs have retained counsel with substantial experience in handling complex, class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiffs and their counsel are committed to the vigorous prosecution of this action. Plaintiffs have no conflicts of interest or interests adverse to those of the putative Class.

66. **Insufficiency of Separate Actions.** Absent a class action, Plaintiffs and members of the Class will continue to suffer the harm described herein, for which they would have no remedy. Even if individual consumers could bring separate actions, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant.

67. **Superiority.** A class action is superior to any other available method for the fair and efficient adjudication of the present controversy for at least the following reasons:

a. The damages suffered by each individual member of the putative Class do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct;

b. Even if individual members of the Class had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

c. The claims presented in this case predominate over any questions of law or fact affecting individual members of the Class;

d. Individual joinder of all members of the Class is impracticable;

e. Absent a Class, Plaintiffs and members of the putative Class will continue to suffer harm as a result of Defendant's unlawful conduct; and

f. This action presents no manageability concerns that would impede its treatment as a class action and, in fact, is the most appropriate and efficient method by which Plaintiffs and the members of the putative Class can obtain redress for the harm caused by Defendant's misconduct.

68. In the alternative, the Class may be certified for the following reasons:

a. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication concerning individual members of the Class, which would establish incompatible standards of conduct for Defendant; and

b. Adjudications of claims of the individual members of the Class against Defendant would, as a practical matter, be dispositive of the interests of other members of the putative Class who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests.

## CAUSES OF ACTION

### COUNT I
### UNJUST ENRICHMENT/QUASI-CONTRACT
### (On Behalf of Plaintiffs and the Nationwide Class)

69. Plaintiffs hereby repeat, reallege, and incorporate by reference all preceding paragraphs as though fully set forth herein.

70. Plaintiffs brings this Count on behalf of themselves and the Nationwide Class (the "Class").

71. Plaintiffs and the putative Class Members conferred a benefit on Defendant by purchasing the Ladder—payments that Defendant knowingly accepted while aware of the product's defect and unfitness for its intended use.

72. Defendant either knew or should have known that the payments rendered by Plaintiffs and Class Members were given with the expectation that the Ladder would have the qualities, characteristics, and suitability for the use represented and warranted by Defendant. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

73. By its wrongful acts and omissions described herein, including selling the Ladder, which contained both a Defect and was inoperative for the intended use, Defendant was unjustly enriched at the expense of Plaintiffs and putative Class Members.

74. Defendant's wrongful conduct directly caused Plaintiffs' detriment and resulted in Defendant's unjust enrichment, as the benefit it received flowed directly from the misconduct alleged in this Complaint.

75. Defendant has unjustly profited from its unlawful, unfair, and deceptive conduct at the expense of Plaintiffs and the putative Class Members. It would be inequitable and contrary to principles of justice for Defendant to retain the profits, benefits, and other compensation obtained through the sale of the Ladder, as such enrichment was directly tied to the misconduct alleged herein.

76. Defendant was unjustly enriched by retaining revenues from Class Members' purchases of the Ladder. Such enrichment is unjust and inequitable because Defendant knowingly manufactured, marketed, and sold defective and dangerous Products while omitting material facts, causing Plaintiffs and Class Members to purchase the Ladder they otherwise would not have bought had the truth been disclosed.

77. Defendant's conduct allows it to knowingly realize substantial revenues from selling the Ladder at the expense of, and to the detriment of, Plaintiffs and Class Members, and Defendant's benefit and enrichment. Defendant's retention of these benefits violates fundamental justice, equity, and good conscience principles.

78. Under common law principles of unjust enrichment and quasi-contract, it is inequitable for Defendant to retain the benefits conferred by Plaintiffs' and Class Members' overpayments.

79. Plaintiffs and Members of the Classes seek disgorgement of all profits resulting from such overpayment.

**COUNT II**
**BREACH OF IMPLIED WARRANTIES**
**(On Behalf of Plaintiffs and the Nationwide Class)**

80. Plaintiffs hereby repeat, reallege, and incorporate by reference all preceding paragraphs as though fully set forth herein.

81. Plaintiffs bring this Count on behalf of themselves and the proposed Nationwide Class (the "Class").

82. Defendant is and was at all relevant times a merchant involved in the manufacturing, distributing, warranting, and/or selling of the Ladder.

83. The Product was and is, at all relevant times, a "good" within the relevant laws.

84. Defendant knew or had reason to know of the specific use for which the Ladder, as a good, was purchased.

85. Defendant entered into agreements with retailers, suppliers, and/or contractors to sell its Ladder to be used by Plaintiffs and the proposed Class Members.

86. Defendant provided Plaintiffs and the proposed Class Members with implied warranties that the Ladder was merchantable and fit for the ordinary purposes for which the Ladder was used and sold and was not otherwise injurious to consumers, that the Ladder would pass without objection in the trade, be of fair and average quality, and conform to the promises and affirmations of fact made by Defendant in its misrepresentations and omissions regarding safety. This implied warranty of merchantability is part of the basis for the benefit of the bargain between Defendant and Plaintiffs and Class Members.

87. Defendant breached the implied warranty of merchantability because the Ladder is not fit for its ordinary purpose of being a reasonably safe structure for transit and access into a person's attic. The Ladder contains the Defect, rendering the Ladder unsafe to use as intended. Therefore, the Ladder is not fit for its particular purpose.

88. As instructed by the Recall Notice, Plaintiffs are directed to completely discontinue use of the Product due to the ongoing safety risk of the Ladder's bolts breaking, and a fall risk associated therefrom.

89. The aforementioned problems associated with the Ladder constitute safety risks, such that the Ladder is neither safe nor suitable for individuals to use. Therefore, there is a breach of the implied warranty of merchantability.

90. Moreover, due to the inadequate and overdue nature of the Recall, and Defendant's failure to administer it appropriately, it is not required and would be futile for Plaintiffs to provide Defendant further opportunity to cure their breach.

91. Plaintiffs and Class Members have had sufficient direct dealings with either Defendant or one of their authorized retailers, representatives, and agents to establish a contract between Defendant, on the one hand, and Plaintiffs and each Class Member, on the other hand.

92. Nevertheless, privity is not required because Plaintiffs and each Class Member are the intended beneficiaries of Defendant's warranties and its sale through retailers. The retailers were not intended to be the ultimate consumers of the Ladder and have no rights under the warranties provided by Defendant. Defendant's warranties were designed for and intended to benefit the consumer only, and Plaintiffs and Class Members were the intended beneficiaries of the Ladder. Thus, it was reasonably foreseeable that Plaintiffs and Class Members would be the intended beneficiaries of the Ladder and its warranties.

93. Defendant impliedly warranted that the Ladder was safe, suitable for individuals to use, of merchantable quality, and fit for its intended purpose. These implied warranties included, among other things: (i) a warranty that the Ladder manufactured, supplied, distributed, and/or sold by Defendant was safe and suitable to safely support individuals during ordinary use; (ii) a warranty that the Ladder would be fit for its intended use while the Ladder is being used; and (iii) a warranty that the Ladder would conform to all of the promises and affirmations of fact on the Ladder's label and online advertising.

94. Instead, the Ladder contains a defective design and/or manufacture, as alleged herein. Defendant failed to adequately warn Plaintiffs and Class Members that the Ladder

contained the Defect, was not safe or suitable for use, and its bolts could and have broken during ordinary use, causing serious injuries.

95. Defendant breached the implied warranties because the Ladder was and is sold with the Defect.

96. Defendant's attempt to limit or disclaim any implied warranties is unconscionable and therefore unenforceable.

97. Plaintiffs and Class Members had no meaningful choice in determining the terms of the purchase of the Ladder, as such terms unreasonably favored Defendant, who had superior and exclusive knowledge of the Defect, which existed at the time of sale of the Ladder. A gross disparity in bargaining power existed between Defendant and Plaintiffs and the Class Members, and Defendant knew or should have known that the Ladder was defective at the time of sale.

98. Contrary to the applicable implied warranties, the Ladder, at the time of sale and thereafter, was not fit for its ordinary and intended purpose. Instead, the Product suffered, and continues to suffer, from the Defect as alleged herein.

99. Defendant's failure to adequately repair or replace the dangerous Product caused the warranty to fail in its essential purpose.

100. As a direct and proximate result of the foregoing, Plaintiffs and the Class Members suffered, and continue to suffer, financial damages and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## COUNT III
## Negligent Misrepresentation
## (On Behalf of Plaintiffs and the Nationwide Class)

101. Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

102. Defendant's actions and omissions alleged herein constitute negligent misrepresentation.

103. Defendant misrepresented material facts concerning the safety, suitability, and quality of the Ladders, including that the Ladders were safe for ordinary use.

104. Defendant has no reasonable grounds for believing that its misrepresentations were true. Among other things, Defendant represented that the Ladders were of high quality and safe. Defendant knew or should have known but failed to disclose that, contrary to its representations, the Ladders contained the Defect.

105. Defendant made such misrepresentations with the intent to induce Plaintiff and Class members to rely on its misrepresentations and purchase Ladders containing the Defect.

106. Plaintiffs and Class members had no knowledge of the falsity of Defendant's representations and reasonably believed them to be true. In justified reliance on Defendant's mis representations, Plaintiffs and Class members purchased the Ladders containing the defect.

107. As a direct and proximate consequence, Plaintiffs and Class members suffered harm. Among other things, they would not have purchased Defendant's Ladders, or would have paid less had they known of the presence of the Defect.

108. Plaintiffs and Class members are therefore entitled to damages and relief, as prayed for hereunder.

**COUNT IV**
**Violation of Indiana Deceptive Consumer Sales Act**
**Ind. Code §§ 24-5-0.5-1, *et seq.***
**(On Behalf of Plaintiff Braun and Indiana Class)**

109. Plaintiff Braun identified above, individually and on behalf of the Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

110. The purposes and policies of the Indiana Deceptive Consumers Sales Act (the "DCSA"), Indiana Code § 24-5-0.5-1 to -12, are to:

a. Simplify, clarify, and modernize the law governing deceptive and unconscionable consumer sales practices;

b. Protect consumers from suppliers who commit deceptive and unconscionable consumer sales practices; and

c. Encourage the development of fair consumer sales practice.

Ind. Code. § 25-5-0.5-1(b).

111. The General Assembly has instructed courts to construe the DCSA liberally to promote these purposes and policies. Ind. Code § 24-5-0.5-1(a).

112. Louisville Ladder is a "supplier" as defined in the DCSA because it is a seller or other person who regularly engages in or solicits consumer transactions, which are defined to include sales of personal property, services, and intangibles that are primarily for a personal, familiar, or household purpose, such as those at issue in this action. Ind. Code § 24-5-0.5-2(1), (3).

113. This matter involves a "consumer transaction," defined as "a sale, lease, assignment, award by chance, or other disposition of an item of personal property, real property, a service, or an intangible… to a person for purposes that are primarily personal, familiar, charitable, agricultural, or household, or a solicitation to supply any of these things." Ind. Code § 24-5-0.5-2(a).

114. Louisville Ladder engaged in unfair, abusive, and deceptive acts, omissions, and practices in connection with consumer transactions, in violation of Ind. Code § 24-5-0.5-3(a).

115. Louisville Ladder's acts and practices were "unfair" because they caused or were likely to cause substantial injury to consumers which was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

116. The injury to consumers from Louisville Ladder's conduct was an is substantial because it was non-trivial and non-speculative; and involved a monetary injury. The injury to consumers was substantial not only because it inflicted harm on a significant and unprecedented number of consumers, but also because it inflicted a significant amount of harm on each consumer.

117. Louisville Ladder's acts and practices were "abusive" for numerous reasons (a) because they materially interfered with consumers' ability to understand a term or condition in a consumer transaction, interfering with consumers' decision-making; (b) because they took unreasonable advantage of consumers' lack of understanding about the material risks, costs, or conditions of a consumer transactions; consumers lacked an understanding of the material risks and costs of a variety of their transactions; (c) because they took unreasonably advantage of consumers' inability to protect their own interests; consumers could not protect their interests due to the asymmetry in information between them and Louisville Ladder; (d) because Louisville Ladder took unreasonably advantage of consumers' reasonable reliance that they were providing truthful and accurate information.

118. Louisville Ladder also engaged in "deceptive" acts and practices in violation of Ind. Code § 24-5-0.5-3(A) and § 24-5-0.5-3(b) by (a) misrepresenting that the subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses or benefits it does not have which the supplier knows and should reasonably know it does not have and (b) misrepresenting that the subject of a consumer transaction is of a particular standard, quality,

grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not.

119. Louisville Ladder's representations and omissions were material because they were likely to deceive reasonable consumer.

120. Louisville Ladder's conduct includes incurable deceptive acts that Louisville Ladder engaged in as part of a scheme, artifice, or device with intent to defraud or mislead, under Ind. Code § 24-5-0.5-2(a)(8).

121. As a direct and proximate result of Louisville Ladder's uncured or incurable unfair, abusive, and deceptive acts or practices, Plaintiffs and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in transacting through Louisville Ladder's services.

122. Louisville Ladder's violations present a continuing risk to Plaintiffs and Class members as well as to the general public.

123. Plaintiff Braun and Class members seek all monetary and non-monetary relief allowed by law, including the greater pf actual damages of $500 for each non-willful violation; the greater of treble damages or $1,000 for each willful violation; restitution; reasonable attorneys' fees and costs; injunctive relief; and punitive damages.

**COUNT V**
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 ILCS §§ 505, *et seq.***
**(On Behalf of Plaintiff Shelton and the Proposed Illinois Class)**

124. Plaintiff Shelton, individually and on behalf of the Illinois Class, repeats and re-alleges each and every allegation contained in all preceding paragraphs as though fully set forth herein.

125. Louisville Ladder is a "person" as defined by 815 ILCS § 505/1(c).

126. Plaintiff Shelton and Illinois Class Members are "consumers" as defined by 815 ILCS § 505/1(e).

127. Louisville Ladder's conduct as described herein was in the conduct of "trade" or "commerce" as defined by 815 ILCS § 505/1(f). Louisville Ladder's conduct is described in full detail above.

128. Louisville Ladder engaged in unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentations or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact in violation of 815 ILCS § 505/2.

129. Louisville Ladder's representations and omissions were material because they were likely to deceive reasonable consumers.

130. Louisville Ladder intended to mislead Plaintiff Shelton and Illinois Class Members and induce them to rely on its misrepresentations and omissions.

131. The above unfair and deceptive practices and acts by Louisville Ladder were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury that these consumers could not reasonably avoid; this substantial injury outweighed any benefit to consumers or to competition.

132. Louisville Ladder acted intentionally, knowingly, and maliciously to violate Illinois's Consumer Fraud Act, and recklessly disregarded Plaintiff Shelton's and Illinois Class Members' rights. Louisville Ladder's knowledge that the Ladders contained an undisclosed and dangerous Defect put it on notice that the Ladders were not as it advertised.

133. As a direct and proximate result of Louisville Ladder's unfair, unlawful, and deceptive acts and practices, Plaintiff Shelton and Illinois Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, loss of use, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their Ladders.

134. Plaintiff Shelton and Illinois Class Members seek all monetary and non-monetary relief allowed by law, including damages, restitution, punitive damages, and reasonable attorneys' fees and costs.

**COUNT VI**
**Violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS §§ 510/1, *et seq.***
**(On Behalf of Plaintiff Shelton and the Illinois Class)**

135. Plaintiff Shelton, individually and on behalf of the Illinois Class, repeats and re-alleges each and every allegation contained in all preceding paragraphs as though fully set forth herein.

136. Louisville Ladder is a "person" as defined by 815 ILCS § 510/1(5).

137. Louisville Ladder engaged in deceptive trade practices in the conduct of its business, in violation of 815 ILCS § 510/2(a), including:

a. Representing that goods or services have characteristics that they do not have;

b. Representing that goods or services are of a particular standard, quality, or grade if they are of another;

c. Advertising goods or services with intent not to sell them as advertised; and

d. Engaging in other conduct that creates a likelihood of confusion or misunderstanding.

138. Louisville Ladder's representations and omissions were material because they were likely to deceive reasonable consumers.

139. The above unfair and deceptive practices and acts by Louisville Ladder were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff Shelton and Illinois Class Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

140. As a direct and approximate result of Louisville Ladder's unfair, unlawful and deceptive trade practices, Plaintiff Shelton and Illinois Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, loss of use, and monetary and non-monetary damages including from not receiving the benefit of their bargain in purchasing their Ladders.

141. Plaintiff Shelton and Illinois Class Members seek all monetary and non-monetary relief allow by law, including reasonable attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court:

1. Declare that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiffs as Class Representatives and appointing the undersigned counsel as Class Counsel;

2. Award Plaintiffs and Class members compensatory, statutory, actual, and/or monetary damages, including interest, in an amount to be determined at trial;

3. Declare that Defendant must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits they received from the sale of the Product;

4. Order Defendant to pay attorneys' fees and litigation costs to Plaintiffs and the other members of the Classes;

5. Award punitive damages where permitted by statute, in an amount to be determined at trial, due to Defendant's willful and reckless disregard for the safety of consumers despite its knowledge of the Defect;

6. Award pre-judgment and post-judgment interest as permitted by law;

7. Order such other and further relief as may be just and proper.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury of all claims so triable.

DATED: August 26, 2026

Respectfully submitted,


*/s/ Leslie Pescia*
Leslie Pescia
Rachel Minder*
**SIRI & GLIMSTAD LLP**
745 Fifth Ave., Suite 500
New York, NY 10151
T: (212) 532-1091
lpescia@sirillp.com
rminder@sirillp.com

Kevin Laukaitis*
Andreas Moffett*
**LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: (215) 789*4462
klaukaitis@laukaitislaw.com
amoffett@laukaitislaw.com

Christopher D. Jennings*
Tyler B. Ewigleben*

Daniel S. Tomascik*
**JENNINGS & EARLEY PLLC**
500 President Clinton Avenue, Suite 110
Little Rock, AR 72201
T: (501) 255-8569
Email: chris@jefirm.com
tyler@jefirm.com
dan@jefirm.com

*Attorneys for Plaintiffs and the Class*

**pro hac vice to be submitted*